Kerns et al. *v.* Kane et al., Appellants.

Argued October 14, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Leonard Boreman,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, for appellants.

*M. Y. Steinberg,* with him *Hymen Schlesinger,* for appellees.

OPINION PER CURIAM, October 15, 1949:
The judgments are reversed and the complaints dismissed; opinion will be filed later.

OPINION BY MR. JUSTICE JONES, November 14, 1949:
These appeals are from judgments of mandamus against the Board of Elections of Allegheny County and the Director of the County's Department of Elec-

tions, ordering and directing them to receive and file nomination papers of the plaintiffs (except for John Lester) and to place the plaintiffs' names on appropriate ballots as candidates of the Progressive party for designated public offices in specified election districts within Allegheny County at the municipal election on November 8, 1949.

The County Board of Elections (composed of the County Commissioners), acting by the Director of the County's Department of Elections, had refused to receive and file the nomination papers in question on the ground that the name (Progressive) used therein to designate the political body, whose candidates the plaintiffs proposed to be, was the same name as that used for a like purpose by an already existing political party and that, therefore, the plaintiffs' use of the name was expressly prohibited by Sections 952 and 976 of the Election Code.[1] The defendants also objected to certain defects apparent on the face of the nomination papers, but, as such matters were amendable, the defendants abandoned that ground and relied solely on the reason first above specified. The proceedings below were consolidated for trial. Jury trial was waived and, there being no facts in dispute, the matter was disposed of by the court below on the complaints, answers and stipulation filed.

The judgments appealed from were entered in due course on October 8, 1949. Because of the general importance of the question involved and the urgent need for an early final decision in the matter, on petition of the appellants, argument of the appeals was advanced by order of the Chief Justice, entered on October 10, 1949, to a special session of the court to be held in Philadelphia on October 14, 1949; and, the appeals were then argued fully by counsel for all parties to the

---

[1] Act of June 3, 1937, P. L. 1333, as amended, 25 PS §§2912, 2936, Pkt. Part.

record. On October 15, 1949, we entered an order reversing the judgments and dismissing the complaints, noting that an opinion would be filed later whereof this is in fulfillment.

In the general election of 1948 in Pennsylvania, the Progressive party polled sufficient votes to constitute it a political party within the State under Sec. 801(a) of the Election Code (25 PS §2831) ; and, on January 12, 1949, the Secretary of the Commonwealth, in pursuance of the duty imposed upon him by Sec. 901(a) of the Election Code (25 PS §2861), certified to the County Board of Elections of Allegheny County that the Republican, Democratic and Progressive party each qualified "as a party within the State, and are therefore eligible to nominate their candidates at the Primary Election, September 13, 1949." Accordingly, the Board of Elections of Allegheny County made available at the primary election held in that county on September 13, 1949, official Progressive party ballots, inter alia, which were distributed to registered voters of that party and which contained blank spaces for writing in names of candidates for all offices for which nominations were to be made by the voters of the respective election districts; and candidates of the Progressive party were so nominated at the primary.

The basic inquiry raised by the pleadings was whether the Board of Elections acted pursuant to law when it rejected the nomination papers tendered by the plaintiffs. The answer to that question is necessarily in the affirmative; it could not be otherwise if the clear and explicit provisions of Secs. 952 and 976 of the Election Code are to be given their intended meaning and effect.

Sec. 952 of the Election Code emphatically declares that,— ". . . No words shall be used in any nomination paper to designate the name or appellation of the political body represented by the candidates named in

such nomination paper which are identical with or deceptively similar to the words used for a like purpose by any existing political party as defined by section 801 of this act, or which contain part of the name or an abbreviation of the name or part of the name of any existing political party; . . ." Obviously, the party designation "Progressive," which the plaintiffs sought to use, was identical with the word that would be used for a like purpose (i.e., nominating candidates) by an existing "political party within the State" as defined by Sec. 801 of the Election Code and as certified by the Secretary of the Commonwealth, so to be, under paragraph (a) of Sec. 801.

For the prevention of any violation of the positive direction of Sec. 952, Sec. 976 of the Election Code required the County Board of Elections to examine the nomination papers so tendered and expressly enjoined upon the Board that "No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if—. . . (g) in the case of nomination papers, the appellation set forth therein is identical with or deceptively similar to the words used by any existing party or by any political body which has already filed nomination papers for the same office, or if the appellation set forth therein contains part of the name, or an abbreviation of the name or part of the name of an existing political party, or of a political body which has already filed nomination papers for the same office." Sec. 976 then concludes with the further peremptory direction that "Upon completion of any [such] examination, if any nomination petition, certificate or paper is found to be defective, it shall forthwith be rejected and returned to the candidate or one of the candidates named therein, together with a statement of the reasons for such rejection."

Such being the law's plain requirements in the circumstances, it is beyond the possibility of reasonable

dispute that no political body or group could lawfully make use of the word "Progressive" in nomination *papers* in Pennsylvania in 1949. Consequently, the County Board of Elections of Allegheny County, in fulfillment of its manifest duty in the premises, did examine the plaintiffs' proposed nomination papers and, finding them to be defective in that "the appellation [Progressive] set forth therein [was] identical with . . . the name . . . of an existing political party . . .", the Board of Elections forthwith rejected the nomination papers and returned them to the candidates named therein with a statement of the reasons hereinbefore given for such rejection. So much should have been an end of the matter!

But, unfortunately, the learned court below adopted an untenable construction of certain portions of the Election Code which the plaintiffs had advanced. The interpretation so placed upon the Act by the lower court (1) expanded the purpose of Sec. 801 and, so, exceeded the legislative intent of that section; (2) it nullified the provisions of Secs. 952 and 976 which specifically have to do with the filing of nomination *papers,* etc.; (3) it failed to give appropriate effect to the Election Code as a whole; (4) it worked an unconstitutional construction by denying to the Act's requirements any necessity for uniformity in the ballots of the various political parties used at a primary; and (5) if effectuated, it would have rendered the Election Code impossible of execution in respect of nominations.

The learned court below based its conclusion on Sec. 801 and the fact that, although the Progressive party qualified under Sec. 801(a) as "a political party within the State", it did not poll in Allegheny County at the general election in 1948 a number of votes sufficient to qualify it separately as "a political party within said county". Paragraph (a) of Sec. 801 prescribes the

voting strength at the general election, preceding the primary, necessary to be shown in order to entitle "a political party within the State" to have its name automatically go upon a ballot at the subsequent primary for the purpose of nominating its candidates for office, and, paragraph (b) of the same section prescribes the voting strength at either the general or municipal election preceding the primary, necessary to be shown in order to entitle "a political party within said county" to have its name automatically go upon a ballot at the subsequent primary for the purpose of nominating its candidates for office.

From these provisions, the court below deduced that Sec. 801 recognizes two separate and distinct entities for any political party in Pennsylvania, viz., an entity within the State and an entity within a county, and that consequently, the Progressive party "Having no local [i.e., Allegheny County] existence, as distinguished from its existence as a State entity, it can have no local candidates." The conclusion was a *non sequitur;* exactly the converse was true. The Progressive party, being "a political party within the State", was entitled to nominate its candidates for office at the September primary in every one of the sixty-seven counties of the State the same as the Republican and Democratic parties were entitled to do. Sec. 801(a) expressly provides that "a political party within the State . . . *shall* nominate *all* its candidates for *any* of the offices provided for *in this act,...*" (Emphasis supplied). And, upon turning to Sec. 602 of the Election Code (25 PS §2752), we find that the officers provided for in this Act, to be elected at a municipal (odd-numbered year) election, are "All judges of courts of record of the various judicial districts and counties, and all county, city, borough, township, ward, school district, poor district and elections officers . . ." and judges of the Supreme and Supe-

rior Courts who may also be elected at a general (even-numbered year) election. There are, therefore, no offices within any county for which nominations may not be made on the primary ballots of a political party qualified as a party within the State under Sec. 801(a). In short, a party that is a political party within the State under Sec. 801(a) is at once a political party in every county of the State. The scope given Sec. 801 by the court below far exceeded its intent and purpose.

The effect so accorded Sec. 801 by the court below patently disregarded the express provisions of Secs. 952 and 976, in violation of the rule of construction that a statute is to be construed so as to give effect, if possible, to all of its parts: see Statutory Construction Act of May 28, 1937, P. L. 1019, Sec. 51, 46 PS §551. The court's action in such regard is all the more incongruous when it is perceived that Sec. 801 has nothing whatsoever to do with the contents of nomination papers, restrictions on the use of party names or the rejection of offending nomination papers, as do Secs. 952 and 976 which Sec. 801 was permitted below to vitiate.

When each, Sec. 801 and Sec. 952, is given its true meaning and appropriate effect, both serve a useful purpose. Sec. 801 was designed to prevent election ballots and voting machinery from being cluttered with the names of inactive or defunct political parties and their candidates,—a condition that can become especially serious in connection with voting machines: cf. *Davidowitz v. Philadelphia County*, 324 Pa. 17, 20-21, 187 A. 585. Paragraph (b) of Sec. 801 was inserted in order to allow any political group or body in a county, not sufficiently numerous in the State to be able to qualify as "a political party within the State", to have its name automatically appear on a primary ballot if it polled in the county at the preceding general or municipal election the number of votes required by

paragraph (b) of Sec. 801 to qualify it as a political party within such county. In no way is Sec. 801 concerned with the organization and operation of political parties or their traditions. The section is a part of an election and ballot law whose historical background has been a constant break with tradition in furtherance of statutory election reform. Sec. 952, which contains the prohibition against the use by a political body of an identical or deceptively similar name to that of an existing political party, makes no distinction whatsoever between a political party within the State under paragraph (a) of Sec. 801 and a political party within a county under paragraph (b). The inhibition of Sec. 952 goes to the use in nomination papers of any name "identical with or deceptively similar to the words used for a like purpose by any existing political party *as defined by section 801* of this act . . ." (Emphasis supplied). It makes no difference whether such existing party qualified as a political party under paragraph (a) or paragraph (b) of Sec. 801. All that is required to save a party's name from being imitated or pirated is that it be a political party as defined by Sec. 801. The Progressive party being such, its name could not lawfully be used in any nomination *papers* (to be distinguished from nomination *petitions*) in Pennsylvania in 1949. When thus read together, Sec. 801 and Sec. 952 help effectuate the legislative intent and purpose of the statute as a whole.

A primary ballot that would have limited a registered Progressive party voter to nominating merely candidates for State office would have been unconstitutional. It will be borne in mind that the County Board of Elections had to provide official Progressive party ballots for use at the September 1949 primary. The certification by the Secretary of the Commonwealth, above referred to,

made that certain. And, in the very same certification, the Secretary had also certified each, the Republican party and the Democratic party, as "a political party within the State" and, as such, entitled to nominate its candidates at the September 1949 primary. Certainly, the ballots for the two major parties had to allow for the nomination of their candidates for *all* offices to be voted for within the county at the ensuing election: see Sec. 801(a). Plainly enough, therefore, the ballots furnished by the Board of Elections to Progressive party voters could not have provided for any less. The registered voters of that party were not to be handed a bobtail ballot limiting them to the nomination of candidates for State office only while registrants of the Republican and Democratic parties could, by their ballots, vote for candidates for each office for which nominations were to be made in the respective election districts of the county. Art. VIII, Sec. 7, of the State Constitution provides that "All laws regulating the holding of elections . . . shall be uniform throughout the State." That provision is as applicable to a primary election as it is to a general or municipal election. See *Winston v. Moore*, 244 Pa. 447, 461-462, 91 A. 520; and *Wasson v. Woods*, 265 Pa. 442, 444, 445, 109 A. 214. To be uniform in the constitutional sense, such a law must treat all persons in the same circumstances alike: see *Winston v. Moore* at p. 461 and cases there cited. It is beyond question that the County Board of Elections was under a duty to provide, for use at the September primary, a Progressive party ballot whose facilities for making nominations (even though by write-ins) were not one bit inferior to the nominating facilities of the ballots furnished voters of the major parties.

We have seen that a Progressive party ballot necessarily had to be supplied by the County Board of Elections at the primary on September 13, 1949, and we have also seen that the primary ballots so supplied to registrants of that party could not properly have lim-

ited them to nominating for less public offices than the number for which candidates were to be nominated by the two other qualified political parties within the State. Witness, then, the utter confusion that would have ensued had the lower court's direction to the Board of Elections to accept and file the plaintiffs' nomination papers been followed. As is well known, the names of candidates nominated by *papers* do not go upon a primary ballot. They appear directly on the election ballot under the party name pre-empted by the *papers*. With nominations made at the primary on ballots of the Progressive party as a party within the State and with nominations of candidates for some of the same offices supplied by the nomination *papers*, the result would have been an insurmountable impasse. There could have been no merger of the two (both Progressive) groups of candidates. That is particularly obvious where the candidates nominated at the primary and those nominated by *papers* for the same offices were not the same persons, as actually happened to be the case in several instances in the record now before us. The confusion that would have followed had the nomination papers been given legal effect is thus evident enough. Certainly, the legislature is not to be presumed to have intended any such result: see Sec. 52(1) of the Statutory Construction Act, supra.

The appellees make one further contention, namely that the phrase "for a like purpose", as used in Sec. 952, means nominating candidates for the same offices and, from that, they argue that nominating candidates for State office and candidates for municipal office are two different purposes. The contention is without merit and stems from the underlying fallacy of the appellees' argument throughout that a political party within the State is not a political party for any county of the State. The phrase "for a like purpose" in Sec. 952 means the nomina-

tion of candidates for public office without regard to whether the nominations are for State office or municipal office. Sec. 976, which prohibits the acceptance by county boards of election of nomination papers containing an identical or deceptively similar name to that used by an existing political party, recognizes no such distinction as that urged by the appellees. In fact, Sec. 976 does not even contain the phrase "for a like purpose".

Accordingly, we reversed the judgments and dismissed the complaints.