402 A.2d 1348

Dennis E. THIEMANN, Petitioner,

v.

Ethel D. ALLEN, D. O., Secretary of the Commonwealth of Pennsylvania, and Louis C. Mete, Commissioner of the Bureau of Elections, Commissions and Legislations for the Commonwealth of Pennsylvania, Respondents,

Republican State Committee of Pennsylvania, Amicus Curiae.

David W. CRAIG, Judge of the Commonwealth Court of Pennsylvania, Petitioner,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF STATE, Ethel D. Allen, D. O., Secretary of the Commonwealth of Pennsylvania, and Louis C. Mete, Commissioner of the Bureau of Elections, Commissions and Legislations of the Commonwealth of Pennsylvania, Respondent,

Republican State Committee of Pennsylvania, Amicus Curiae.

Supreme Court of Pennsylvania.

Argued March 13, 1979.

Decided May 31, 1979.

432

Thomas R. Balaban, Harrisburg, for Thiemann.

Gaylen J. Byker, Philadelphia, for amicus curiae.

Burton D. Morris, Harrisburg, for Craig.

Edward G. Biester, Jr., Atty. Gen., Robert E. Kelly, Norman J. Watkins, Deputy Attys. Gen., for respondents.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

ORDER

PER CURIAM.

AND NOW, TO WIT, THIS 3rd day of April, 1979, 42 Pa. C.S.A. § 3133 (1978) is ruled constitutional. The Secretary of the Commonwealth of Pennsylvania and the Commissioner of the Bureau of Elections, Commissions and Legislations of the Commonwealth are directed to notify the County Boards of Election throughout the Commonwealth and every other party entitled to notice that, in the primary election of 1979, each political party may nominate two candidates for the office of judge of the Commonwealth Court and that, in the primary election of 1979 and in the municipal election of 1979, each elector may vote for two persons or candidates for the offices to be filled.

Leave is granted to any person who filed nomination papers for the office of judge of the Commonwealth Court to withdraw said papers by 5:00 p. m. on April 10, 1979, and the Secretary of the Commonwealth is directed to accept any such withdrawals within the stated period.

Opinions to follow.

NIX, J., dissents and would hold that 42 Pa. C.S.A. § 3133 (1978) is unconstitutional.

LARSEN, J., dissents.

OPINION OF THE COURT

EAGEN, Chief Justice.

Pursuant to 42 Pa. C.S.A. § 726 (1978), we assumed extraordinary jurisdiction of the above captioned petitions for review filed in the Commonwealth Court. Oral argument was presented by petitioners, respondents and, by leave of Court, Amicus Curiae. The substantive issues presented involve the proper application of 42 Pa. C.S.A. § 3133 (1978)

to the primary[1] and municipal[2] elections of 1979 and the constitutionality of that statute.

42 Pa. C.S.A. § 3133 (1978) provides:

"Whenever two or more judges of the Commonwealth Court are to be elected pursuant to 3131(c) (relating to selection of judicial officers for regular terms) at the same election, each qualified elector shall vote for no more than:

(1) one-half of the number of judges to be elected, if the total number to be elected is even; or

(2) the smallest number constituting a majority of the total number of judges to be elected, if the total number to be elected is odd.

"The persons having the highest number of votes, up to the total number of judges to be elected, shall be elected."

The total number of judges to be elected to the Commonwealth Court pursuant to 42 Pa. C.S.A. § 3131(c)(1978) in the 1979 municipal election is three. See *Abraham v. Shapp*, 484 Pa. 573, 400 A.2d 1249 (1979) and order dated February 8, 1979 in cited case, No. 1 E.D. Misc. Dkt. 1979. Respondent, Secretary of the Commonwealth, following the filing of the cited order and pursuant to 42 Pa. C.S.A. § 3133 (1978), notified the county boards of election that each political party was to nominate two candidates for the three judicial offices of the Commonwealth Court to be filled in the municipal election and that each elector was to vote for two candidates in the municipal election. In response to that notification, petitioner, Dennis E. Thiemann, filed a petition for review challenging the constitutionality of 42 Pa. C.S.A. § 3133 (1978). The Secretary, upon the advice of the Attorney General, then revised her interpretation and notified the

1. The Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, art. I, §§ 101 *et seq.*, 25 P.S. §§ 2601 *et seq.* [hereinafter: 25 P.S. § ——] defines a "primary election" at 25 P.S. § 2602(r) as "any election held for the purpose of . . . nominating candidates for public offices to be voted for at an election."

2. A "municipal election" is defined at 25 P.S. § 2602(j) as the constitutionally mandated election held in "odd-numbered years" as opposed to a "general election" which is held in "even-numbered years." 25 P.S. § 2602(h).

State chairperson of each of the two major political parties in the Commonwealth that her interpretation of 42 Pa. C.S.A. § 3133 (1978) as revised would result in each elector being permitted to vote for three persons in the primary with each political party nominating three candidates. This notification did not alter the Secretary's earlier directive that in the municipal election each elector could vote for no more than two candidates to fill the three offices. The Secretary stands ready to notify the county boards of election of the revised interpretation, but has refrained from doing so pending the outcome of this action. Petitioner, David W. Craig, a judge of the Commonwealth Court who has filed nomination petitions, then filed a petition for review seeking alternative rulings, viz. that each party may nominate three candidates in the primary and each elector may vote for three candidates in the municipal election if the statute is declared unconstitutional or that each party may nominate two candidates and each elector may vote for two candidates in the municipal election if the statute is upheld. Amicus Curiae argues that the statute is constitutional; that each party may nominate two candidates; and, that each elector may vote for two candidates in the municipal election.

■ At the outset we are required to construe 42 Pa. C.S.A. § 3133 (1978). The clear and unambiguous language thereof mandates an interpretation which allows each elector to vote for two persons in the 1979 primary and each elector to vote for two candidates in the 1979 municipal election.

1 Pa. C.S.A. § 1921(a) (Supp. 1978–79) provides that the "object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly," and (b) provides:

"[w]hen the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

Clearly, 42 Pa. C.S.A. § 3133 (1978) limits an elector to voting for two persons when three judges of the Common-

wealth Court are "to be elected pursuant to 42 Pa. C.S.A. § 3131(c) . . . at the same election."

The Secretary's interpretation would confine the term "election" to the municipal election and, hence, result in the statute being inapplicable to the primary. 42 Pa. C.S.A. § 3133 and § 3131(c) (1978) must be read in pari materia with the provisions of the Election Code, 25 P.S. §§ 2601 *et seq.*, because each "relate[s] to the same . . . things or to the same class of . . . things." 1 Pa. C.S.A. § 1932(a) (Supp. 1978–79); *City of York v. Reihart,* 475 Pa. 151, 379 A.2d 1328 (1977). Furthermore, when statutes are in pari materia, they must "be construed together, if possible, as one statute," 1 Pa. C.S.A. § 1932(b) (Supp. 1978–79); *Commonwealth v. Philadelphia Electric Co.,* 472 Pa. 530, 372 A.2d 815 (1977), and "[e]very statute [must] be construed, if possible, to give effect to all its provisions." 1 Pa. C.S.A. § 1921(a) (Supp. 1978–79); *City of York v. Reihart,* supra; *Appeal of Neshaminy Auto Villa LTD.,* 25 Pa.Cmwlth. 129, 358 A.2d 433 (1976).

25 P.S. § 2602(f) defines election as "any general, municipal, special or primary election, unless otherwise specified." Hence, "election" under 42 Pa. C.S.A. § 3133 (1978) includes a primary election because it does not otherwise specify.

The Secretary argues the statute refers to an election in which judges are "to be elected" and, hence, does not apply to primary elections because in that process judges are not elected, rather persons are nominated as candidates, citing 25 P.S. § 2602(r). The argument is only technically plausible.

First, the term "to be elected" in the first part of 42 Pa. C.S.A. § 3133 (1978) does not appear to be used to limit the term "election." Clearly, had the Legislature intended to limit the term election to "municipal election," it could easily have done so since the latter term is already defined at 25 P.S. § 2602(j). This, the Legislature did not do.

Second, the last sentence of 42 Pa. C.S.A. § 3133 (1978) indicates those who shall ultimately be elected, but does not limit the first sentence.

Third, were we to accept the Secretary's position, we would, as a practical matter, be compelled to conclude the Legislature has impliedly abolished straight party voting as provided for at 25 P.S. §§ 2963(f) and 3007(b).[3] There is no indication in 42 Pa. C.S.A. § 3133 (1978) that any such result was intended, and we must give effect to all legislative pronouncements if possible, 1 Pa. C.S.A. § 1922(2) (Supp. 1978–79), and find an implied repealer only if the statutes are irreconcilable. 1 Pa. C.S.A. §§ 1932 and 1936 (Supp. 1978–79); *City of York v. Reihart,* supra; *Appeal of Yerger,* 460 Pa. 537, 333 A.2d 902 (1975). Our interpretation reconciles the statutes by allowing for both limited voting and straight party voting. Hence, we give effect to both provisions and do not find an implied repealer.

Thus, we conclude 42 Pa. C.S.A. § 3133 (1978) is clear and unambiguous and by its terms applies to the primary, as well as the municipal, election. Our interpretation is fortified by a study of the history of limited voting in the Commonwealth.

The primary election process determines the candidates of each party for the municipal or general election. 25 P.S. §§ 2602(k), 2602(r); 1 Pa. C.S.A. § 1991 (Supp. 1978–79). Historically, when limited voting applied, a party, whether through the primary election process or through some other means,[4] nominated only as many candidates as an elector

---

**3.** We say as a practical matter because theoretically the paper ballots and voting machines might be prepared in such a way as to reflect three straight party tickets for each party so that, by using one of the three, an elector could vote a straight ticket and still only choose two of the three candidates for Commonwealth Court judge on a party's ticket. For example, if A, B, and C were nominated by party Z, ballot 1 for party Z could include A and B, ballot 2–B and C, and ballot 3–A and C. But we believe such a result would be absurd, and, hence, to interpret 42 Pa. C.S.A. § 3133 (1978) in this manner would violate the legislative mandate of 1 Pa. C.S.A. § 1922(1) (Supp. 1978–79). Also, no legislative authority exists to allow for three different straight party tickets for each party. See *Musmanno v. Lawrence,* 24 Pa.D & C. 93 (Dauphin 1935) (the court sitting as what is now the Commonwealth Court).

**4.** The primary election process is merely a statutorily provided procedure by which parties choose nominees which replaced other meth-

was allowed to vote for in the general or municipal election. *Musmanno v. Lawrence*, supra at 99–100. The General Assembly was aware of this practice when it adopted 42 Pa. C.S.A. § 3133 (1978), and we must afford considerable deference to that awareness. 1 Pa. C.S.A. § 1921(c)(7) (Supp. 1978–79). Since historically the number of candidates each political party nominated under such circumstances was limited to the number an elector could vote for in the general or municipal election, the Legislature must have intended limited voting to apply to the primary. In light of this historical approach to limited voting, the Legislature in enacting 42 Pa. C.S.A. § 3133 (1978) surely did not intend to allow the nomination of more candidates in the primary than each elector could vote for in the general or municipal election.. At a minimum, had such a deviation from historical practice been intended, we do not believe the Legislature would have attempted that deviation in such an uncertain manner.

Also, an election was held in 1973; it was governed in part by the Act of January 6, 1970, P.L. (1969) 434, § 3, *as amended*, December 29, 1972, P.L. 1724, No. 371 §§ 1 and 2, 17 P.S. § 211.3(i) (Supp. 1978–79); that Act is substantially identical to 42 Pa. C.S.A. § 3133 (1978); and, the 1973 election was conducted in the precise manner in which we now interpret 42 Pa. C.S.A. § 3133 (1978). Surely, reenactment by the Legislature of substantially the same provision in 1978 indicates an intent to conduct elections in the same manner as in 1973. See 1 Pa. C.S.A. § 1921(c)(7) (Supp. 1978–79).

Finally, the constitutional and statutory provisions providing for limited voting for county commissioners are similar to 42 Pa. C.S.A. § 3133 (1978) and have been implemented in the same manner as we now interpret 42 Pa. C.S.A. § 3133 (1978) for many years. See Pa. Const. art. 14, § 7 (1874) (amended 1909) (repealed 1968); Pa. Const. art. 9, § 4 (1968);

ods such as conventions, caucuses, and popular vote governed by officials appointed or selected by party rules. *Winston v. Moore*, 244 Pa. 447, 91 A. 520 (1914).

Act of August 9, 1955, P.L. 323, § 501, 16 P.S. § 501 (1956); Act of May 2, 1929, P.L. 1278, No. 446, art. III, § 101 (repealed).

The Secretary argues our interpretation creates a "very real possibility"[5] that the same two persons will receive all nominations and, hence, the names of only two persons will appear on the municipal election ballot when three offices are to be filled. While we acknowledge this possibility exists, we must conclude this legislative oversight does not compel an interpretation different from the clear words of the statute. Moreover, this interpretation will not interfere with the 1979 municipal election determining the three persons who are to fill the judicial positions. If the same individuals win all nominations, the elector is free to reject one or both of the nominees and to "write in" the name of another or the names of other persons, and, by this process, the third office can be filled in the municipal election.[6] Cf. *Wasson v. Woods,* 265 Pa. 442, 109 A. 214 (1919). The right of the elector to select the person to occupy public office is the foundation of the election process, not the right to appear on the ballot. Cf. *Abraham v. Shapp,* supra; *Wasson v. Woods,* supra.

Petitioner, Thiemann, attacks 42 Pa. C.S.A. § 3133 (1978) as violative of the Constitution if it "limits" voting. Since our interpretation does "limit" voting, we shall consider the arguments advanced relative to this.

■ Initially, we note that "[c]ourts may not declare a statute unconstitutional 'unless it *clearly, palpably* and *plainly* violates the Constitution.'" [Emphasis in original.] *Tosto v. Penn. Nurs. Home Loan Agcy.,* 460 Pa. 1, 16, 331 A.2d 198, 205 (1975) quoting *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963).

5. This possibility exists because judicial candidates may file for nominations by their own party and other parties. 25 P.S. § 2870.

6. The wisdom of this process is not a matter with which we need concern ourselves; that is a legislative concern. The possibility that no elector would "write-in" anyone presents no greater problem than if no elector voted for any of a multitude of candidates for the same office even though names appeared on the ballot.

■ Petitioner, Thiemann, concedes limited voting has historically been an integral part of the election process in the Commonwealth. More particularly, he concedes such a method of election is permissible when mandated by the Constitution as in Pa. Const. art. 5, § 16 (1874) (mandating limited voting for the office of justice of the Supreme Court—repealed 1968) and when mandated by the Legislature in certain circumstances as in the Act of June 24, 1895, P.L. 212, No. 128, § 1 (mandating limited voting for judges of the Superior Court). See *Commonwealth ex rel. McCormick v. Reeder*, 171 Pa. 505, 33 A. 67 (1895) [Hereinafter: *McCormick*]. But he argues the Constitution impliedly prohibits limited voting in an election for judicial positions on the Commonwealth Court. Petitioner reasons: (1) that constitutionally created offices may, indeed must, be filled by elections utilizing limited voting when provided for in the Constitution as in Pa. Const. art. 5, § 16 (1873) (repealed 1968); (2) that, in the case of a statewide court statutorily created, the Legislature has discretion to choose the method of selection, including limited voting, see *McCormick;* but (3) that, in the case of a constitutionally created court such as the Commonwealth Court, where no provision in the Constitution mandates limited voting, the Legislature is impliedly prohibited from mandating limited voting. Hence, petitioner urges our ruling in *McCormick* is inapposite here because in that case the office was statutorily created and instantly the office is constitutionally created.

With this we do not agree. *McCormick* makes no such distinction.

The Superior Court was created pursuant to Pa. Const. art. 5, § 1 (1874) (repealed 1968—in pertinent part restored as Pa. Const. art. 5, § 1 (1968)) which provided the General Assembly with authority to establish other courts. The method of selecting judges for such statutorily created courts was not governed by Pa. Const. art. 5, § 15 (1874) (amended 1965—repealed 1968—similar provision restored as Pa. Const. art. 5, § 13 (1968)) which provided: "All judges . . . shall be elected by the qualified electors of the

respective districts over which they are to preside . . ."
because the Superior Court was to serve statewide, not in
districts. Hence, in *McCormick,* supra, 171 Pa. at 515, 33 A.
at 68, we said Pa. Const. art. 12, § 1(1874) (amended 1909)
(renumbered art. 6, § 1 (1966)), which provided: "All officers
whose selection is not provided for in this constitution shall
be elected or appointed as may be directed by law," gov-
erned the method of selection. We did not then reason that,
since the Legislature could have provided for the judges to
be selected by appointment or election, an election involving
limited voting was really a method of appointment by the
electorate which satisfied the mandate of Pa. Const. art. 12,
§ 1 (1874). Nor did we reason that the constitutional term
election within Pa. Const. art. 12, § 1 (1874) differed from
that term as used in other portions of the Constitution
because of the choice between methods of selection given to
the Legislature by Pa. Const. art. 12, § 1 (1874). Had we
done so, *McCormick* could be used to support the distinction
petitioner advances. But this, we did not do.

We said:

"Without regard to what the legislature might have done
to fill the offices created by the establishment of the
Superior Court, whether they might or might not have
made the office appointive, all these questions are now
unimportant and we pass no opinion upon them; the court
is established; the office is made elective to be filled by
the candidates elected at the general election."

*McCormick,* supra, 171 Pa. at 516, 33 A. at 69. Clearly, we
viewed the issue in *McCormick* as whether, when an election
is required either constitutionally or statutorily pursuant to
a legislative choice of alternatives allowed by the Constitu-
tion, the Legislature as the representative of the will of the
people, *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147 (1853),
may mandate limited voting in an election, and to this we
responded affirmatively. In essence, we reasoned that the
Legislature chose the election process of the Constitution

and specifically that of Pa. Const. art. 12, § 1 (1874)[7] to fill the judgeships involved and that limited voting was not a constitutionally impermissible limitation on the right of an elector to participate in the election. Finally, we reasoned Pa. Const. art. 5, § 16 (1874) mandating limited voting in elections for the office of justice of the Supreme Court and similar constitutional provisions applicable to other offices did not warrant application of the maxim expressio unius exclusio est alterius.[8] Hence, *McCormick* clearly stands for the proposition that, where a judicial election is required by a statute, by a statute choosing between constitutionally allowable alternatives, or by the Constitution, the Legislature in its discretion may impose limited voting in specific instances.

The provisions of the Constitution of 1968 do not compel either a different analysis or result.

Pa. Const. art. 5, § 13(a)(1968) mandates the election of Commonwealth Court judges, see *Abraham v. Shapp,* supra, and, as explained, no reason exists to distinguish between an election held pursuant to that provision and an election held pursuant to a legislative choice allowed by the Constitution as with Pa. Const. art. 12, § 1 (1874), or for that matter an election mandated purely by statute. Petitioner's reasoning that the deletion in 1968 of Pa. Const. art. 5, § 16 (1874), providing for limited voting in elections for the office of justice of the Supreme Court, shows an intent to create an implied prohibition against limited voting is predicated upon his view of *McCormick.* But, as has been shown, when *McCormick* is analyzed properly, the repeal of Pa. Const. art. 5, § 16 (1874) indicates an intention to leave the method of

7. We did not distinguish the term "election" in Pa. Const. art. 12, § 1 (1874) from the use of that term elsewhere in the Constitution, that is, we did not say different criteria are used to determine if an election requirement is met where the source of the requirement is a statutory mandate pursuant to a choice allowed by the Constitution, than where the source of the requirement is a constitutional mandate.

8. Indeed, Mr. Justice Williams filed a dissenting opinion joined by Mr. Justice Sterrett in which he expressly disagreed with the majority as to this.

election under Pa. Const. art. 5, § 13(a)(1968) to the discretion of the Legislature, i. e. it indicates an intention to remove the constitutional mandate as to the Supreme Court, and the method of election may constitutionally include limited voting. Given the language in *McCormick* specifically indicating we were dealing with a legislatively chosen election as allowed by Pa. Const. art. 12, § 1 (1874) and, hence, with an election within the terms of the Constitution, and given our ruling that no implied prohibition existed, as well as the dissenting opinion on precisely that point, the delegates to the 1967–68 Constitutional Convention must have known only an express prohibition could remove the legislative discretion expressly recognized in *McCormick* and could hardly be deemed to have intended an implied prohibition by repealing Pa. Const. art. 5, § 16 (1874). Certainly, had such been intended, *McCormick* would at least have compelled greater clarity.[9]

To the extent petitioner's argument for an implied prohibition is based on the reasoning that Pa. Const. art. 5, § 13(a)(1968) requires an election and limited voting interferes with the rights of an elector, *McCormick* clearly rejected such reasoning. To the extent petitioner's position is based upon Pa. Const. art. 5, § 13(a)(1968) mandating an election, no implied prohibition can arise from this provision because an election involving limited voting satisfies the provision's mandate. Limited voting in an election was held in *McCormick* to be an adequate method of satisfying a statutorily mandated election and the election was constitutional in scope because the statute merely chose the election process allowed by Pa. Const. art. 12, § 1 (1874). No reason has been advanced to distinguish between the term election in Pa. Const. art. 12, § 1 (1874) and in Pa. Const. art. 5, § 13(a), and we know of none. The former provision required a process of election once the legislative choice was made, *McCormick,* and the latter requires a process of elec-

9. We have examined the Debates of the Pennsylvania Constitutional Convention of 1967–68 and have found nothing to evidence the intent attributed by petitioner to the delegates, nor has any portion of the debates been brought to our attention to support such a view.

tion. In each instance, limited voting in the process satisfies the mandate.

Petitioner, Thiemann, argues that, since judicial candidates may cross-file, see 25 P.S. § 2870, the purpose of limited voting is "diminish[ed], if not eliminated" and that we should strike down 42 Pa. C.S.A. § 3133 (1968) for that reason. But petitioner concedes the purpose of the statute is not to insure minority representation, but to encourage it; without doubt, even if the effectiveness is diminished by cross-filing, the statute does have a purpose and to some extent advances that purpose, i. e., it encourages minority representation. Cf. *Commonwealth ex rel. Teller v. Jennings*, 409 Pa. 513, 186 A.2d 916 (1963).

Finally, petitioner argues there is absolutely no justification in having limited voting "applicable only to the Commonwealth Court." We shall not dwell on this argument; suffice it to say the jurisdiction of the Commonwealth Court differs from other courts and the Legislature may have determined a minority voice in the subject matter area of that court's jurisdiction is more important than elsewhere.

For the reasons stated heretofore, we have previously issued the following:

AND NOW, TO WIT, this 3rd day of April, 1979, 42 Pa. C.S.A. § 3133 (1978) is ruled constitutional. The Secretary of the Commonwealth of Pennsylvania and the Commissioner of the Bureau of Elections, Commissions and Legislations of the Commonwealth are directed to notify the County Boards of Election throughout the Commonwealth and every other party entitled to notice that, in the primary election of 1979, each political party may nominate two candidates for the office of judge of the Commonwealth Court and that, in the primary election of 1979 and in the municipal election of 1979, each elector may vote for two persons or candidates for the offices to be filled.

Leave is granted to any person who filed nomination papers for the office of judge of the Commonwealth Court to withdraw said papers by 5:00 p. m. on April 10, 1979, and

the Secretary of the Commonwealth is directed to accept any such withdrawals within the stated period.

NIX, J., filed a dissenting opinion in which LARSEN, J., joins.

LARSEN, J., filed a dissenting opinion.

NIX, Justice, dissenting.

In my judgment, the majority has grievously erred in its conclusion that 42 Pa.C.S.A. section 3133 (1978) is compatible with the provisions of the Constitution of this Commonwealth. I am, therefore, compelled to register my dissent and to set forth my reasons for reaching a contrary position. Even accepting the presumption of constitutionality that statutory enactments are to be accorded, *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 394 A.2d 932 (1978); *Hosiery v. Commonwealth*, 469 Pa. 92, 364 A.2d 919 (1976); *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975); *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963); a reasonable interpretation of the clear and unambiguous language of the Constitution, viewed in its proper historical setting, leads inexorably to the conclusion that the Constitution prohibits limited voting for judicial officers.[1]

Article 5 of the Pennsylvania Constitution provides for three methods of selecting justices, judges and justices of the peace: election pursuant to Section 13(a), retention election under Section 15(b) and appointment under Section 13(b).[2] *Abraham v. Shapp et al.*, 483 Pa. 573, 400 A.2d 1249, (1979). Since the instantly challenged method of judicial selection obviously does not purport to comply with either Section 13(b) or 15(b), the narrow question presented in this appeal is whether the scheme of limited voting set forth in 42 Pa.C.S.A., section 3133 qualifies as an election pursuant

1. We are not here concerned with the constitutionality of limited voting provisions for elected non-judicial public officials. I, therefore, express no opinion as to that subject.

2. The voters of Pennsylvania rejected the selection option offered in Section 13(d).

to section 13(a). Section 13(a) "mandates elections for state-wide judgeships by the 'electors of the Commonwealth'." *Abraham v. Shapp, supra,* 483 Pa. 577, 400 A.2d p. 1251. "The implication is clear, judges who are to serve statewide must be elected to do so by the electors who are to be served, namely, the electors of the Commonwealth." *Id.* A system of limited voting, such as that fashioned pursuant to the provisions of 42 Pa.C.S.A., section 3133, which does not permit all of the electors to participate in the selection of the candidates for each judicial office to be filled is clearly not within the mandate of section 13(a).[3] I am, therefore, forced to conclude that since the electors of this Commonwealth are precluded from electing one of the three seats to be filled, under the provision of section 3133, that provision is clearly, palpably and plainly violative of section 13(a).

The majority attempts to gloss over the blatant constitutional deficiency of section 3133, by lauding the alleged benefits of political minority representation on the Commonwealth Court.[4] This reasoning clearly misses the mark.

**3.** Under section 3133, although these seats on the Commonwealth Court are to be filled in the forthcoming general election, each elector is being restricted to voting for only two candidates for nomination and election. I am in agreement with the majority that the attempt to construe section 3133 as applying only to the general election is pure nonsense.

**4.** Implicit in this reasoning is the assumption that the candidate, once elected, will continue to reflect a particular political philosophy in the discharge of his judicial responsibilities. I for one do not share such a jaundice view of the judiciary in this Commonwealth. While I agree that the bench should be reflective of the various cultural, ethnic and religious groups of our society, I do not accept that this goal is realistically fostered by mandating representation by political minorities.

The absurdity of the majority's position is further demonstrated by the result that could be reached under their view. When we consider that there are principally two major political parties in this state offering a slate of candidates for election and that frequently they comprise the only candidates seeking election, coupled with the fact that we permit cross filing in judicial elections, it is possible that the same two candidates will be nominated on both the Democratic and Republican tickets. Thus, we could be faced with a situation where the third seat could not be filled through the election process. Such a possibility would frustrate the recognized preference in our constitutional scheme for judicial officers to be selected through the elec-

Regardless of the wisdom of a particular method of judicial selection, the critical question raised here is whether it is in accordance with the organic law of this Commonwealth. Section 13(a) provides that *". . . judges . . . shall be elected . . . by the electors of the Commonwealth. . . ."* The term "shall" has generally been interpreted as being mandatory. *Fishkin v. Hi-Acres, Inc.,* 462 Pa. 309, 341 A.2d 95 (1975); *Amal. Trans. U., Div. 85 v. Port Alleg. Co.,* 417 Pa. 299, 208 A.2d 271 (1965). Further, there is nothing in the language of 13(a) that would authorize an election of a candidate for a statewide judicial post by *a portion of the electors of the Commonwealth.* In *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), the United States Supreme Court pertinently observed:

> No right is more precious in a free country than that of having a choice in the election of those who make the laws under which, as good citizens, they must live. Other rights, even the most basic, are illusory if the right to vote is undermined.

*Wesberry v. Sanders, supra* at 17, 84 S.Ct. at 535. The scheme of limited voting proposed in Section 3133 represents an unwarranted and unauthorized erosion of the franchise and cannot be countenanced.

> The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. *And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.* (emphasis added).

*Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964).

The result reached by the majority in this appeal is even more inexplicable in light of this Court's recent decision in *Abraham v. Shapp, supra.* In *Abraham v. Shapp, supra,* a

tion process. *Barbieri v. Shapp,* 476 Pa. 513, 383 A.2d 218 (1978); *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976).

majority of the Court rejected the premise that the election of an individual by the electorate within a judicial district was sufficient to satisfy the requirements of 13(a) and allow that judicial officer to serve a full 10-year term on *a court of statewide jurisdiction.* Under section 3133, one-third of the electors voting would determine the candidate to fill the third seat. While this may be a difference in degree, it is surely not a difference in kind. In *Abraham v. Shapp, supra,* the majority stated: "In the context of a discussion of the election process to fill a public office, *we have indicated the right of the elector to select between persons is necessary.*" (emphasis added). 400 A.2d p. 1253. Yet today, the majority approves a scheme wherein two-thirds of the voters will have no say in the selection of the person filling one of the judicial seats.

The majority relies heavily upon our decision in *Com. ex rel. McCormick v. Reeder,* 171 Pa. 505, 33 A. 67 (1895) to support its conclusion. I believe that a proper analysis of that decision indicates that it not only fails to support the majority's position but rather is in conflict with it. In *Reeder,* we upheld by a five to two vote, a limited voting scheme for the election of judges to the then newly created Superior Court. Crucial to that decision was the fact that the Superior Court had been legislatively created (and not constitutionally mandated) and that the Constitution at that time had expressly provided for limited voting for the election of Supreme Court justices. Pa.Const. art. 5, section 16 (1874). The opinion was clear in expressing that the Court was persuaded that since there was a provision for limited voting for the only constitutionally mandated statewide court at that time, the Constitution could not be viewed as prohibiting limited voting in a legislatively created court of statewide jurisdiction. Moreover, the result of the *Reeder* Court was further supported by art. 12, section 1 which provided "All officers *whose selection is not provided for in this constitution* shall be elected or appointed, as may be directed by law." (emphasis added). *See* present art. 6, section 1 (1968). The *Reeder* Court was satisfied that for-

mer art. 12, section 1, was controlling since nothing else in the former Constitution prevented such a result.

The situation under the 1968 Amendment is entirely different. The Commonwealth Court was constitutionally mandated, art. 5, section 1, and was not simply a creature of legislative fiat. The former provision for limited voting for Supreme Court justices was deleted in the 1968 Constitutional Amendment. Unlike the situation presented in *Reeder*, as conceded by the majority, the selection of the judges to fill the seats under scrutiny is governed by Section 13(a) of the Constitution, thus art. 6, section 1 (the counterpart of former art. 12, section 1) is not available as support for the majority's result reached in this appeal. Most significant, and ignored by the majority, is that the *Reeder* Court was able to avoid a determination as to whether the language requiring "election by qualified electors" was incompatible with a scheme of limited voting. Under the 1874 Constitution this requirement was expressly limited to the election of district judges of the common pleas, art. 5, section 15, thus the *Reeder* Court could legitimately say that it was not applicable to the election of judges of a court of statewide jurisdiction, *Com. ex rel. McCormick v. Reeder, supra* at 515, 33 A. at 68. Here a resolution of this question was crucial, yet the majority has attempted to skirt the issue.

For the reasons stated, I am of the view that section 3133 provides a scheme of judicial selection that is not in accord with the mandate of art. 5, section 13(a) of the Constitution and, therefore, should not be permitted to stand.

LARSEN, J., joins in this dissenting opinion.

LARSEN, Justice, dissenting.

I join in Mr. Justice Nix's dissenting opinion. The Act is clearly unconstitutional; in a democracy free citizens ought and should be able to vote for each and every one of their (now "alleged") elected officials. Sadly, the majority has decided otherwise.