**Kathy Law ORLOSKI, Plaintiff,**

v.

**William R. DAVIS, Secretary of the Commonwealth, Defendant,**

v.

**Edward M. MEZVINSKY and Pennsylvania Democratic State Committee, Intervenors.**

Civ. A. No. 83–0268.

United States District Court, M.D. Pennsylvania.

April 11, 1983.

As Amended June 6, 1983.

Richard J. Orloski, Calnan & Orloski, P.C., Allentown, Pa., for plaintiff.

Mollie A. McCurdy, John G. Knorr, III, Allen C. Warshaw, Deputy Attys. Gen., Com. of Pa., Harrisburg, Pa., for defendant.

Karan M. Balaban, Harrisburg, Pa., A. Richard Gerber, Nancy Hopkins, Gerber, Gerber & Shields, Norristown, Pa., for intervenors.

## MEMORANDUM

RAMBO, District Judge.

### I.  Background

Plaintiff filed a three count complaint in the captioned action on March 1, 1983. Count one challenges the constitutionality of 42 Pa.Cons.Stat.Ann. § 3133 (Purdon) (1981).[1] Count two challenges the constitutionality of cross-filing in statewide judicial races which plaintiff contends defendant has permitted under Pa.Stat.Ann. tit. 25,

---

1. Section 3133 states that:

Whenever two or more judges of the Commonwealth Court are to be elected pursuant to section 3131(c) (relating to selection of judicial officers for regular terms) at the same election, each qualified elector shall vote for no more than:

(1) one-half of the number of judges to be elected, if the total number to be elected is even; or

(2) the smallest number constituting a majority of the total number of judges to be elected, if the total number to be elected is odd.

The persons having the highest number of votes, up to the number of judges to be elected, shall be elected.

§ 2870(f) (Purdon) (West Supp.1982).[2] Count three challenges the constitutionality of the combined effect of the two statutes. Jurisdiction is based upon 42 U.S.C. § 1983 and the first and fourteenth amendments. The complaint seeks preliminary and permanent injunctive relief enjoining defendant from, among other things, enforcing § 3133 and from permitting registered Republicans to run in the Democratic primary for statewide judicial offices. Plaintiff filed a motion for a preliminary injunction on March 2, 1983. On March 4, 1983 Edward Mezvinsky and the Pennsylvania Democratic State Committee filed an unopposed motion to intervene under Federal Rule of Civil Procedure 24 which was granted. Intervenors support plaintiff's position on count one and part of count three, but oppose her position on count two and part of count three. The court consolidated plaintiff's motion for a preliminary injunction with trial on the merits and held a hearing on March 16, 1983. The court finds no constitutional violations and will enter judgment in favor of defendant.

The parties stipulated to the following facts at the hearing. (1) Plaintiff, a resident of Allentown, Pennsylvania, is a duly elected Democratic Committeeperson representing the Third District of South Whitehall Township, Lehigh County, Pennsylvania. (2) Defendant, as Secretary of the Commonwealth of Pennsylvania, certifies nominees of the political parties in the primary and winners in the municipal[3] elections of 1983. (3) In 1983, the following statewide judicial vacancies are to be filled: one justice of the Supreme Court of Pennsylvania, five judges of the Superior Court of Pennsylvania, three judges of the Commonwealth Court of Pennsylvania. (4) In the 1983 statewide judicial primary elections, defendant will accept otherwise valid nominating petitions from a statewide judicial candidate regardless of whether he or she is a candidate for nomination for the same office of any party other than the one designated in the nomination petition. If otherwise valid, the defendant will certify the candidate's name for placement on the ballot to the county election board for the primary election of 1983. (5) In both the primary and municipal elections of 1983, defendant intends to apply § 3133 to the election of Commonwealth Court candidates. Accordingly, voters in the Democratic primary will only be permitted to vote for two candidates, and voters in the Republican primary will only be permitted to vote for two candidates. The two highest vote getters in both primaries will be listed on the ballot for the municipal election in 1983. The three highest vote getters in the municipal election will then be certified as the winners for the purpose of filling the three Commonwealth Court vacancies.

## II. Discussion

### A. Limited Voting under § 3133

[1] Plaintiff and intervenors allege that § 3133 violates their fourteenth amendment right to one man one vote by diluting their voting power. Intervenors specifically argue that the "majority party votes which are cast for the two (2) candidates limited to the majority party are worth less in electing their preferred choices than the fewer minority party votes are worth in electing their single candidate." (Intervenor's Brief, Doc't # 12 at p. 8).

**2.** Section 2870(f) provides that:

Each candidate for any State, county, city, borough, incorporated town, township, ward, school district, poor district, election district, party office, party delegate or alternate, or for the office of United States Senator or Representative in Congress, shall file with his nomination petition his affidavit stating—

(f) unless he is a candidate for judge of a court of record, or for the office of school director in a district where that office is elect or for the office of justice of the peace that is not a candidate for nomination for the same office of any party other than the one designed in such petition;

**3.** A municipal election is defined at Pa.Stat. Ann. 25, § 2602(j) (Purdon) (1933) as the constitionally mandated election held in odd-numbered years as opposed to a general election held in even-numbered years. Pa.Stat. Ann. 25, § 2602(h).

The court disagrees. Numerous courts have held that the one man one vote doctrine is inapplicable to judicial elections. Their holdings are premised on the view that the doctrine is designed to preserve a truly representative form of government which is simply not relevant to the makeup of the judiciary. *Wells v. Edwards,* 347 F.Supp. 453, 455 (M.D.La.1972) *aff'd. mem.* 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973); *E.g., Voter Information Project Inc. v. City of Baton Rouge,* 612 F.2d 208, 211 (5th Cir.1980); *Holshouser v. Scott,* 335 F.Supp. 928, 931–32 (M.D.N.C.1971) *aff'd. mem.* 409 U.S. 807, 93 S.Ct. 43, 34 L.Ed.2d 68 (1972).[4]

Plaintiff and intervenors also argue that § 3133 violates their fourteenth amendment rights to equal protection and due process. They contend that § 3133 is arbitrary, capricious and unreasonable because it only applies to Commonwealth Court judges and not to judges of the Superior or Common Pleas Courts or justices of the Supreme Court. In his brief defendant contends that neither plaintiff nor intervenor Mezvinsky has standing to raise the rights of judicial candidates. At oral argument, defendant specifically contended that neither plaintiff nor intervenor Mezvinsky are candidates for Commonwealth Court vacancies. Defendant also rejects intervenor Mezvinsky's argument that as Chair of the Democratic State Committee he represents the rights of the three Democratic endorsed candidates. Defendant maintains that the candidates are unnamed as intervenors and Mezvinsky himself cannot vindicate the rights of others. Defendant relies on *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

■ The court believes that plaintiff, intervenor Mezvinsky and intervenor Democratic State Committee have standing to raise their claim. "A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . .' " *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205 (citations omitted). Plaintiff and intervenor Mezvinsky's alleged injury from the limited voting statute arise from their first amendment rights as voters. In several ballot access cases the United States Supreme Court has articulated the intertwining relationship between candidates and voters: "[t]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972); "The right of a party or an individual to a place on the ballot is entitled to protection and is intertwined with the rights of voters." *Lubin v. Panish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974). While the cited cases involved restrictions on candidate access to the ballot which is not the situation here, the cases are instructive on the close relationship between candidates and voters. Since § 3133 limits the voter's ability to vote for a full slate of candidates to fill all vacancies on the Commonwealth Court which restriction does not apply to any other state judicial election, the voter is arguably sufficiently injured so as to have standing to challenge the statute on equal protection and due process grounds.

■ Regardless of the standing of plaintiff and intervenor Mezvinsky, the court finds that intervenor Pennsylvania Democratic State Committee, as an association representing the rights of its members, has standing to challenge § 3133. Although unbriefed by the parties, it appears to the court that the Committee meets the

---

4. The court also notes that even if the one man one vote doctrine applied, there would be no violation since each elector's vote counts as much as any other vote. *See Kae v. Warden,* 334 F.Supp. 602, 605 (E.D.Pa.1) (Pennsylvania limited voting scheme for election of county commissioners did not violate one man one vote doctrine.)

The court also notes that intervenors' political party dilution argument was discussed and rejected in *LoFrisco v. Schaffer,* 341 F.Supp. 743, 748–751 (D.Conn.) (three judge court), *aff'd,* 409 U.S. 972, 93 S.Ct. 313, 34 L.Ed.2d 236 (1972).

tests for standing set forth in *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211 and *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The requirements are that: (1) the association members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of a sort that would give them standing to sue in their own right; (2) the interests that the association seeks to protect are germane to the organization's purpose; (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211; *Hunt,* 433 U.S. at 343, 97 S.Ct. at 2441. The Pennsylvania Democratic Committee alleges that, as the official representative body of the Pennsylvania Democratic Party, it endorses and supports candidates for each statewide judicial office in the Commonwealth. It alleges that it represents all Democratic electors of the Commonwealth and the Committee's three Democratic endorsed judicial candidates for Commonwealth Court. Thus three of the organizational members are suffering injury from the statute in question such that they themselves could have filed suit. It appears that the interest the Committee seeks to protect, in this case, unlimited voting for Democratic candidates to the Commonwealth Court, is germane to its organizational purpose. Finally, it arguably appears that neither the claim asserted nor the relief requested requires participation of individual members. Presuming, therefore, that adequate standing has been established, the court will address the equal protection and due process challenges.

▮ The court believes that § 3133 passes muster under the equal protection clause using either the traditional rational relationship test or the more rigorous strict scrutiny test. Under traditional equal protection analysis, legislatures are presumed to have acted constitutionally and their classifications need only bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if

no grounds can be conceived to justify them. *McDonald v. Board of Election,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). Under strict scrutiny, a law found to have a real and appreciable impact on a fundamental right will be closely scrutinized and must be reasonably necessary to the accomplishment of a legitimate state objective. *Bullock,* 405 U.S. at 144, 92 S.Ct. at 856.

▮ The clear intent of the Pennsylvania legislature in enacting limited voting for Commonwealth Court candidates was to encourage minority party representation. *Theimann v. Allen,* 485 Pa. 431, 444, 402 A.2d 1348, 1354 (1979). This court agrees with the three judge panel convened in *Kaelin v. Warden,* which stated that "[n]othing in the Constitution militates against a scheme which is designed to encourage some minority representation, unless it can be shown that it results in invidious discrimination, which we cannot find." 334 F.Supp. at 605 (citation omitted). The court held that encouraging minority party representation in the election of county commissioners was a legitimate political goal and that the limited voting procedure was a constitutional method of achieving that goal. This court finds the same rationale applicable in this case. The same rationale has led other courts to uphold similar limited voting schemes. *Cintron-Garcia v. Romero-Barcelo,* 671 F.2d 1, 6 (1st Cir. 1982)(limited voting scheme for Puerto Rico at-large state representatives) (listing cases).

The intervenor committee contends, however, that the application of this limited voting scheme to Commonwealth Court elections but not to elections to other Pennsylvania courts is arbitrary, capricious and unreasonable. The court disagrees. The legislature's interest in encouraging minority representation on the Commonwealth Court also merely reflects the unique nature of the court. Commonwealth Court more so than any other Pennsylvania court, is involved with the affairs of the Commonwealth government as such. The court has

exclusive original jurisdiction over civil actions brought against the Commonwealth and its officials with specified exceptions; concurrent jurisdiction with the Courts of Common Pleas over all actions brought by the Commonwealth; exclusive (with specific exceptions) appellate jurisdiction over all appeals from Courts of Common Pleas involving the Commonwealth, Commonwealth officials; secondary review of certain appeals from Commonwealth agencies and secondary review of local government matters; exclusive (with limited exceptions) appellate jurisdiction over all appeals from final orders of governmental agencies; and exclusive original (with specific exceptions) jurisdiction over election contests. 42 Pa. Cons.Stat.Ann. §§ 761–764 (Purdon) (1981). The Commonwealth Court's daily and voluminous involvement with Commonwealth affairs vests it with the ability to affect the lives of many more individuals than just the parties to the lawsuit or judicial proceeding. The legislature thus could have determined that encouraging minority representation on the court would foster additional public confidence in an already outstanding bench. As the Pennsylvania Supreme Court stated: "[s]uffice it to say the jurisdiction of the Commonwealth Court differs from other courts and the Legislature may have determined a minority voice in the subject matter area of that court's jurisdiction more important than elsewhere." *Thiemann,* 485 Pa. at 444, 402 A.2d at 1355. Thus, even though other courts not subject to limited voting share the court's jurisdiction in some issues and even though actions of the court are reviewed by appellate courts not governed by limited voting, the fact remains that the Commonwealth judges occupy somewhat unique positions in the type of cases that they hear and the impact that their decisions have on state residents. These differences convince this court that the legislature's passage of § 3133 is not a demonstration of invidious discrimination proscribed by the fourteenth amendment. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1954).

▮ Intervenors further contend, as the court understands their argument, that "a grave inconsistency" exists between § 3133 and Pa. Const. Art. 5, § 13(b) (1968, amended 1979) which authorizes the Governor to fill vacancies in the office of judge by appointment.[5] According to intervenors, there is no mandate imposed upon the Governor to act in accordance with the goal of § 3133. The court finds that this "inconsistency" does not invalidate § 3133. Even if the effectiveness of § 3133 is diminished to some extent by the appointment provision found in Art. 5 § 13(b), the statute does have a purpose and does advance that purpose. *See Thiemann,* 485 Pa. at 444, 402 A.2d at 1354 (cross-filing may diminish but does not completely eliminate effectiveness of § 3133).

▮ The intervenors also raise a due process challenge to § 3133 under the fourteenth amendment. Due process "emphasizes fairness between the State and the individual dealing with the state, regardless of how other individuals in the same situation may be treated." *Ross v. Moffitt,* 417 U.S. 600, 609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974). The court finds that the state's articulated goal in passing § 3133 is legitimate and § 3133 is a reasonable way of achieving the goal. No due process violation exists. *LoFrisco,* 341 F.Supp. at 748

---

**5.** § 13. Election of justices, judges and justices of the peace; vacancies

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. The appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. The person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the unexpired term whichever is less, except in the case of persons selected as additional judges to the Superior Court, where the General Assembly may stagger and fix the length of the initial terms of such additional judges by reference to any of the first, second and third municipal elections more than ten months after the additional judges are selected. The manner by which any additional judges are selected shall be provided by this section for the filling of vacancies in judicial offices.

(citing other cases where limited voting was upheld).

Plaintiff and intervenors also allege that § 3133 violates their first amendment right of free association. Their argument appears to be that Democrats—or members of any other organized group—have, as a part of their First Amendment right to free association, a right to field and vote for three candidates since three vacancies on the court are to be filled. This is merely another way of stating that Pennsylvania may not employ a voting procedure which encourages minority representation. The same issue was ably addressed and rejected in *Hechinger v. Martin,* 411 F.Supp. 650 (D.D.C.1976) (three judge court), *aff'd per curiam,* 429 U.S. 1030, 97 S.Ct. 721, 50 L.Ed.2d 742 (1977). Using a strict scrutiny test, the *Hechinger* court concluded that the facilitation of some representation of political minorities on the District of Columbia City Council was a valid "state" interest and sufficiently important to warrant the challenged interference with the rights of political association. 411 F.Supp. at 652. The court also found that the means used to promote the interest were not an unnecessary abridgment of first amendment rights. *Id.* The *Hechinger* rationale is valid in the instant case. The court finds no first amendment violation.

Having reached the conclusion that § 3133 is constitutional, *the court emphasizes that it does not pass judgment on the wisdom of the statute.* "Our view of the wisdom of a state ... provision may not color our task of constitutional adjudication." *Clements v. Fashing,* —— U.S. ——, 102 S.Ct. 2836, 2848, 73 L.Ed.2d 508 (1982). "Constitutional limitations arise only if the classification scheme is invidious or if the challenged provision significantly impairs interests protected by the First Amendment." *Id.*

## B. Cross-Filing

Plaintiff alleges that defendant's use of Pa.Stat.Ann. tit. 25, § 2870(f) to permit cross-filing by candidates for Commonwealth Court violates her first amendment right to free association. Plaintiff cites *Democratic Party of the United States v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981) and *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982). Plaintiff also alleges that such cross-filing violates her rights to due process and equal protection. Intervenors and defendant argue that no first or fourteenth amendment violations exist and contest plaintiff's standing to assert any fourteenth amendment claims.

■ The court first examines plaintiff's first amendment challenge. The courts have recognized that the basic right of political association is assured by the first amendment and is protected against state infringement by the fourteenth amendment. *See NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Bates v. Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1985). Freedom of association includes the right to engage in group advocacy of various political beliefs and thus the right to organize effectively, assemble, speak, write, and proselytize as individuals see fit. *Sweezy v. New Hampshire,* 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); *Williams v. Rhodes,* 393 U.S. 23 at 60, 89 S.Ct. 5, 21 L.Ed.2d 24 (Stewart, J., dissenting). This freedom to associate has been held to be "fundamental." *Storer v. Brown,* 415 U.S. 724, 729, 94 S.Ct. 1274, 1278, 39 L.Ed.2d 714 (1974). To prevail on her claim, plaintiff must show that cross-filing imposes a substantial burden on her associational rights that is not outweighed by a compelling state interest. *Cousins v. Wigoda,* 419 U.S. 477, 489, 95 S.Ct. 541, 548, 42 L.Ed.2d 595 (1975).

Plaintiff's reliance on *Wisconsin* and *Rodriguez* in support of her claim of free association infringement is misplaced. The sole question addressed in *Wisconsin* was whether, once Wisconsin opened its Democratic Presidential preference primary to voters who did not publicly declare their affiliation, it could then require the National Democratic Party to honor the binding

primary results, even though those results were reached in a manner contrary to National Party rules. 450 U.S. at 120, 101 S.Ct. at 1018. Thus, the issue before the Court was "whether the state may compel the National Party to. seat a delegation chosen in a way that violates the rules of the Party." 450 U.S. at 121, 101 S.Ct. at 1018. Citing *Cousins,* the Court found that the Democratic Party's right of association had been violated by Wisconsin's attempt to determine the qualifications and eligibility of delegates to its National Convention.

■ The instant case obviously does not involve the associational rights of the Democratic Party, or any party, to control its own internal affairs and set its own goals. Here, members of each party retain complete control to choose who their nominees will be for Commonwealth Court. Although cross-filing encourages a wider field of candidates, the voters' right to associate and to work for the election of their candidate is in no way impaired. If plaintiff does not want to work for or vote for a cross-filed Republican in the 'Democratic primary, she does not have to. There is therefore no infringement of her associational rights.

Similarly, the issue before the Court in *Rodriguez* was whether Puerto Rico could by statute vest in a political party the power to fill an interim vacancy in the Puerto Rico legislature. 102 S.Ct. at 2196. Appellants, who were not affiliated with the Popular Democratic Party (PDP) claimed that their rights of association were violated by their exclusion, based solely upon their party affiliation, from the PDP sponsored election held to select a successor for the seat vacated by the death of a PDP member of the legislature. The Court rejected the challenge by stating that the PDP was entitled to adopt its own procedures in selecting a replacement, which could exclude nonparty members in what the court analogized to a party primary election. 102 S.Ct. at 2202. The Court cited to *Wisconsin, supra.* This is not the situation presented by cross-filing.

■ Even presuming there is a substantial interference with plaintiff's associational rights which prevents her from identifying those candidates with whom she shares common political beliefs, this interference is more than outweighed by the interest of the State in enhancing the integrity of the election of its judges by introducing an element of nonpartisanism into the primary selection process. The state, as well as its electors, has a substantial interest in judges in general being nonpartisan. The function of judges is to administer the law, not to espouse the cause of a particular constituency. *Stokes v. Fortson,* 234 F.Supp. 575, 577 (N.D.Ga.1964).

■ Plaintiff also contends that cross-filing lengthens the ballot and thereby leads to voter confusion apparently resulting in violation of her fourteenth amendment rights. Controlling a candidate's access to the ballot is clearly within the legislature's authority and wisdom. *See Storer,* 415 U.S. at 732, 94 S.Ct. at 1280. Absent a clear violation of a constitutional mandate, a legislature may permit cross-filing. *See Sagan v. Commonwealth of Pennsylvania,* 542 F.Supp. 880, 882 (W.D.Pa.1982). Plaintiff has failed to allege how a long ballot, composed of candidates who have met Pennsylvania's eligibility requirements, violates any constitutional mandate. The court finds no merit to plaintiff's claim.

■ Plaintiff also asserts that § 2870(f) violates the equal protection clause because it permits judicial candidates to cross-file on primary election ballots but denies that cross-filing privilege to other candidates.[6] Defendant contends that plaintiff lacks standing to assert this claim because she does not allege that she is a candidate for any elected Commonwealth office and thus she herself has not suffered some threatened or actual injury resulting from the putatively illegal action. Assuming plaintiff has standing, based on the court's previous discussion, her claim lacks merit. The same equal protection claim was asserted

---

**6.** In fact, candidates for school director are also     permitted to cross-file under 25 P.S. § 2870(f).

and rejected in *Sagan*, 542 F.Supp. at 882. Commonwealth officials in *Sagan* argued that the prohibition against cross-filing by legislative and executive candidates serves to protect the political party system and to ensure adversarial elections. The court found that these considerations had no relevance with respect to judicial candidates since judges do not represent the cause of a particular constituency. *Id.* This court agrees with the *Sagan* analysis.

Plaintiff alleges that cross-filing discourages persons from running for judicial office because cross-filing makes the process more difficult, cumbersome and expensive. No case law or further factual basis is cited in support of this charge. Again, defendant contests plaintiff's standing because she has failed to allege that she is a candidate for judicial office or that she even considered candidacy and thus she could not possibly have suffered any injury from cross-filing. Even if the claim is addressed, defendant argues that it is frivolous on its face because a judicial candidate need not cross-file if he or she feels it is too difficult. The court agrees with this statement and further notes that plaintiff failed to offer any evidence about filing fees and how they impact on judicial candidates. The court therefore finds insufficient evidence to consider plaintiff's "expense" argument.

### C. The Combined Impact of Cross-Filing and Limited Voting

██ Plaintiff contends that the combined impact of cross-filing and the limited voting procedure effectively disenfranchises electors who did not vote in the primary. In support of this contention, plaintiff points to the 1979 election results for Commonwealth Court judges in which three judges were to be elected. There, Judge Craig won both parties' nomination while Judge McPhail won the remaining Republican nomination and Judge Williams won the remaining Democratic nomination. Plaintiff concludes that since only three names appeared on the municipal election ballot for three vacancies, electors who did not vote in the primary or independents who could not vote in the primary lacked a meaningful choice at the municipal election. Defendant argues that in the municipal election each voter is free to reject all or a portion of the individuals who won nominations and to write in the name or names of other persons and thus no disenfranchisement occurs. The court agrees with the defendant.[7] While the first amendment right to vote has been interpreted as guaranteeing an effective vote, *Rhodes*, 393 U.S. at 30, 89 S.Ct. at 10, it has not been held to ensure that one's candidate is entitled to win election. Furthermore, plaintiff's efforts to construct a disenfranchisement argument on the basis of persons who failed to vote in the primary lacks merit. The court is unaware of any case holding that the first amendment entitles a qualified voter who failed to vote in a primary to challenge the slate of candidates presented at the municipal election. As for independents, the inability of independents to vote in primary elections is not before the court and thus any disenfranchisement they may suffer based on their inability to participate in the primary is not for this court to resolve. They, like the voters who could have but did not vote in the primary are still able to exercise their right at the municipal election.

Defendant in his brief justifies the totality of the effect of limited voting and cross-filing when viewed together. *See Williams*, 393 U.S. at 34, 89 S.Ct. at 12. Defendant argues that retaining cross-filing minimizes the effects of partisan politics in judicial elections. This procedure blurs party identification by permitting bi-partisan support of candidates and party nomination of a candidate who is not a member of that party. Thus, the emphasis is on who the party thinks will be the best judge rather than party identification.

To the extent, however, that the General Assembly permitted partisan politics to remain a factor in Commonwealth Court elec-

---

7. Pa.Stat.Ann. tit. 25 §§ 3055(b) & (c) and 3056(e) allow voters to write in candidates at the primary and general (or municipal) elections.

tions, defendant contends that the legislature chose to minimize its impact through the limited voting procedure. This procedure encourages the election of minority party judges. The legislature's concern for non-partisanship, or at least partisan balance, on the Commonwealth Court alone merely reflects the previously described unique nature of the court. This court finds no constitutional impairments from the combined effect of limited voting under § 3133 and cross-filing under § 2870(f).

An appropriate order will be entered.