631 A.2d 797

**In re the Substitute Nomination Certificate of Scott A. EVANS as a Democratic Candidate for Judge of the Court of Common Pleas for the 12th Judicial District, Dauphin County Pennsylvania.**

**Petition of Elizabeth–Hrenda ROBERTS et al. Registered Democrats Residing in the 12th Judicial District, Dauphin County, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Heard Sept. 1, 1993.

Decided Sept. 2, 1993.

Publication Ordered Sept. 20, 1993.

Jeffrey B. Piccola, for petitioner.

Joshua D. Lock, for respondent.

## OPINION

CRAIG, President Judge.

The objectors, registered Democrats in the 12th Judicial District, Dauphin County, have filed a petition objecting to and seeking to set aside a substitute nomination certificate of

Scott A. Evans as Democratic party candidate for the position of common pleas court judge in Dauphin County. In answer to that petition, Evans has admitted all of the petitioner's averments. The facts, as asserted in the petition, are as follows.

Evans had sought and won the Republican party nomination for the position in the May 18, 1993 primary election. Louis "Larry" J. Adler, who won the Democratic nomination for the position in the primary election, withdrew as candidate for the position before August 19, 1993, the date on which the Democratic Party of Dauphin County filed the substitute nomination certificate with the Office of the Secretary of the Commonwealth, substituting Evans for Adler as the Democratic candidate.

### 1. Right of Party to Submit Substitute Who is the Nominee of Another Party for Common Pleas Court Judge

The objectors assert that the substitute nomination certificate is invalid under section 979 of the Election Code, 25 Pa.S. § 2939, which provides in pertinent part:

[N]o substitute nomination certificate shall nominate any person who has already been nominated by any political party or by any other political body for the same office. Act of June 3, 1937, P.L. 1333, § 979; Act of May 6, 1943, P.L. 196, § 1. [Provision has remained unchanged since 1943.]

That provision appears to preclude the Democratic party from substituting Evans as its candidate because he is already the nominated Republican candidate. However, the legislature amended the Election Code in 1985, by adding section 981.1, 25 Pa.S. § 2941.1, relating to affidavits of substituted candidates, which provides:

Each candidate ... *selected as provided in sections 979 and 980 of this act,* shall file with the substituted nomination certificate an affidavit stating ... (f) *unless he is a candidate for judge of a court of common pleas* ... that he is not a candidate for the same office of any party or political body other than the one designated in such certificate.... (Emphasis added.) Added by Act of April 18, 1985, P.L. 5, No.

4, § 6, as amended by Act of February 19, 1986, P.L. 29, No. 11, § 10.

That amendment, which expressly applies to a candidate "selected as provided in section ... 979", i.e., as a substitute nominee, necessarily recognizes that persons who seek to run for a position on the court of common pleas are exempted from section 979's prohibition against party nominees being substituted as candidates by another party. The amendment therefore reflects the long-standing statutory differentiation between elections for judges and other political offices. The 1985 provision mirrors section 910 of the Election Code, 25 Pa.S. § 2870, relating to affidavits of candidates, which, since its adoption in 1937, has provided that persons seeking judicial office in the courts of common pleas can cross-file and run for the nomination of both political parties. *Thompson v. Morrison*, 352 Pa. 616, 620, 44 A.2d 55, 57 (1945) (Different classification in Election Code, between those who may not be candidates on more than one party ticket and those seeking election to office of judge of a court of record, is not unconstitutional.)

Furthermore, as a matter of statutory construction, the Supreme Court in *Thompson* indicated that the term "same office", which is a term also used in section 979, does not encompass candidates for positions on the courts of common pleas. The Supreme Court stated:

> The provision in section 951, 25 P.S. § 2911, that a candidate's affidavit shall include a statement that "his name has not been presented as a candidate by nomination petitions for the same office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for the same office" must be read in the light of the legislative classification of candidates. It must be confined to the class to which it is applicable. *It applies only to candidates of the class who are not candidates for judicial office.* (Emphasis added.)

*Id.* at 617–8, 44 A.2d at 57–8.

In 1947, the legislature amended the specific language of section 951, which the Supreme Court construed in *Thompson*,

by substituting the phrase "any such office" for the phrase "same office." However, the provisions at issue in this case use the phrase "same office" in a nearly identical context to the original text of section 951 of the Code, and therefore the Supreme Court's interpretation of that language in *Thompson* remains pertinent here.

Furthermore, in *Brown v. Finnegan*, 389 Pa. 609, 133 A.2d 809 (1957), the Supreme Court, adopting a trial court's opinion in the case, 8 D & C 2d 780, concluded that the legislature deliberately deleted the phrase "same office" from section 951 in order to eliminate the former exception for candidates for judicial office with respect to persons nominated by *papers,* i.e., by political bodies, but with no reference to those nominated by *parties.* The court stated:

> There can be little question that the single nomination requirements of the Election Code are not generally applicable to candidates for judicial office. However, the clear distinction drawn by it to candidates of *political bodies* is amply justified. A judicial candidate who can obtain both major parties' nomination at a primary has proven its bipartisanship. This is the one area of candidacy where he should be given the opportunity to show it.
>
> A candidate nominated by political papers is in a different situation. He could give little evidence of bipartisan support by securing a party nomination and in addition that of a political body. (Emphasis added.)

389 Pa. 609, 133 A.2d at 812.

On the other hand, a candidate enjoying a primary nomination, and in addition, a substitute candidate nomination by another *party,* can claim bipartisan support, albeit not by the *voters* of both parties.

Although candidate Evans here did not obtain the Democratic nomination in the primary election, *Brown* indicates that the legislative purpose behind eliminating the dual nomination provision in section 951, 25 P.S. § 2911, was to prevent cross-party nominations by political *bodies.* Additionally, the legislature, adopting the limiting language only in certain sections

of the Election Code has also indicated, by retaining the "same office" language in section 981.1, that it intended that candidates of one political party could be nominated as substitutes by another political party.

■ Hence, we conclude that the provision in section 979, prohibiting persons already nominated by one political party from being nominated as a substitute candidate by another political party for the "same office", does not apply to candidates for positions on the courts of common pleas.

### 2. Motion to Dismiss Objection Petition Because the Objectors Did Not Timely Perfect the Petition

A procedural question also confronts the court here. Candidate Evans has filed a motion to dismiss the objection petition, basing his dismissal claim on section 982 of the Election Code, 25 P.S. § 2942, which states:

> All substituted nomination certificates may be objected to, *as provided in section 977* of this act, *except objections* to substituted nomination certificates *must, in any case, be filed within three (3) days* after the filing of the substituted nomination certificate: Provided, however, That no objections as to form and conformity to law, shall be received after the day on which the printing of ballots is started. For purposes of this section, a certificate shall include all affidavits required to be filed with such certificate under this act. (Emphasis added.)

Section 977 of the Code, 25 P.S. § 2937, to which section thus 982 refers, states in pertinent part:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless *within seven days after the last day for filing* said nomination petition or paper, *a petition is presented to the court* specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. *A copy of said petition shall, within said period, be served on the officer* or board with whom said nomination petition or paper was filed. (Emphasis added.)

Thus, if section 982 incorporates the pattern of section 977 entirely, section 982 would require objectors to serve upon the Bureau of Elections a copy of an objection petition within the same time period allowed for filing objections, which, as indicated above, is three days in the case of substituted nominees. Such is the contention of the candidate.

In this case, the Democratic party filed the substitute nomination certificate on Thursday, August 19, 1993, and the objectors timely filed the objection petition with this court within three days thereafter, on Monday, August 23 (Sunday, August 22 being excluded from the computation under 1 Pa.C.S. § 1908 and Pa.R.C.P. No. 106(b)), but the objectors did not serve the bureau with the objection petition until Tuesday, August 24, 1993, which fell outside the three-day period.

In *In re Lee*, 525 Pa. 155, 578 A.2d 1277 (1990), the Supreme Court stated that the seven-day time requirement of section 977 is mandatory. The failure to serve the secretary within that time limit renders objection petitions void. Thus, there is no exception to the rule, even if an objector places a petition in the mail within the time limit. Although service by mail is permissible, the secretary must *receive* a copy of the petition within the time period. *In re Petition of Acosta*, 525 Pa. 135, 578 A.2d 407, 409 (1990).

The objectors respond by contending that section 982 literally imposes the three-day time limit only as to when objections must be "filed," i.e., with the court, and thus leaves section 977's seven-day period unchanged as to the period within which the objections must be "served" on the elections officer.

However, no such neat dichotomy between filing and service appears with respect to the two sections, in part because section 977 requires the objections to be "presented" to the court and "served" on the officer, but section 982 requires objections to be "filed" within three days, arguably with the court.

This unhelpful draftsmanship creates ambiguity which can be logically resolved by resort only to reading section 982's cross-reference to section 977 as adopting the concept of filing (or presentation) to the court and service upon the officer as being mandated within the same time period, and reading section 982 as simply substituting a three-day period for section 977's seven-day period. The shortened period is logical for attacks upon substitute nominations because they necessarily arise when the general election has become more imminent. On the other hand, for objections to substitutes under section 982, a three-day period for filing with the court and a more-than-twice-as-long seven-day period for service upon the agency would be an inexplicable incongruity.

Finally, the objectors call attention to section 982's proviso, following the three-day filing period language, which states also that

> no objections as to form and conformity to law shall be received after the day on which the printing of ballots is started....

The objectors urge that, because "conformity to law" is involved here, the ballot-printing deadline would permit this court to receive or hear these objections, and presumably permit the objectors to serve them, *after* the three-day period has expired.

But the proviso deals with when no objections "shall be received" and "received" would refer to receipt by the court, not to service upon the bureau, which is at issue here. (The difficulty of interpretation is thus indicated by the Code's switching from presenting to filing to receiving—all with reference to entry of objections with the court.)

The ballot-printing-time proviso, literally applicable to *any* objection because all objections would involve "conformity to law" in some respect, would be more meaningful if seen as a proviso possibly *shortening* the allowable period, rather than as one which would universally extend it.

■ Hence, the only sound reading of these sections is that service on the bureau, as well as filing or presentation to the

court, are both required to be done within the same three-day period in the case of objections to substituted candidates. Accordingly, the objections were not timely perfected and therefore must fall, in view of the critical nature of service timeliness mandated by *Lee* and *Acosta.*

## *Conclusion*

This court must dismiss the petition to set aside the substitute nomination certificate.

## *ORDER*

NOW, September 2, 1993, the petition to set aside the substitute nomination certificate of Scott A. Evans as the Democratic candidate for common pleas court judge is dismissed.