Jackie SHOGAN, Petitioner

v.

The COMMONWEALTH of Pennsylvania, BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION et al., Respondents.

Commonwealth Court of Pennsylvania.

Heard Sept. 21, 2007.
Decided Sept. 21, 2007.
Publication Ordered Dec. 21, 2007.

David J. Montgomery, Pittsburgh, for petitioner.

Albert H. Masland, Chief Counsel, Harrisburg, for respondent, Bureau of Commissions, Elections and Legislation.

Robert J. Sugarman, Philadelphia, for respondent, John M. Younge.

Joseph M. Cosgrove, Forty Fort, for interested parties, Ron Folino and Christine Donahue.

OPINION BY Senior Judge FEUDALE.

Jackie Shogan, a candidate for the Pennsylvania Superior Court in the 2007 Municipal Election, has filed a petition seeking special and/or preliminary injunctive and declaratory relief relating to the position of her name on the ballot. The facts relevant to this matter are set forth below.

Pursuant to the Election Code [1], February 13, 2007 was the last day for the Secretary of the Commonwealth to send to the county boards of election a written notice designating the public offices for which statewide candidates are to be nominated. Coincidentally, February 13, 2007 was also the last day for incumbent justices or judges who had filed a declaration of candidacy for retention under Article V, Section 15 of the Pennsylvania Constitution to revoke their declaration in order that the vacancy be listed for the Primary Election.

The facts relevant to this matter are that on February 13, 2007, the Secretary gave notice that an election would be held for two seats on the Pennsylvania Superior Court, specifically, seats to replace retiring Judge Joseph A. Hudock and Judge Robert C. Daniels, who in turn had been appointed following the retirement of former President Judge Joseph A. Del Sole. At the same time, incumbent Superior Court Judge Michael T. Joyce, who had previously notified the Secretary of his intent to run for retention, did not revoke this declaration. Accordingly, two open seats on the Superior Court were listed on the 2007 Primary ballot. Judge Joyce was slated to be listed as a candidate for retention in the November, 2007 Municipal Election.

Various candidates filed nomination petitions for nomination as candidates for the two open seats, and, following the 2007 primary election, the Democratic Party nominated Christine Donahue and Ron Folino while the Republican Party nominated Cheryl Allen and Bruce Bratton as their candidates. Petitioner, Jackie Shogan, was also a candidate for nomination by the Republican Party, but finished third and was not nominated for one of the two then-vacant seats.

In August of 2007, Judge Joyce rescinded his declaration of candidacy for retention, announcing that he would leave the Superior Court at the end of his term. Pursuant to Section 978.3 of the Election Code, 25 P.S. § 2938.3, *added by* the Act of Jan. 16, 1974, P.L. 5, if a justice or judge who had filed a declaration of candidacy for retention and more than 60 days preceding the municipal election revoked the declaration by notifying the Secretary of the Commonwealth in writing, the nomination to fill such vacancy shall be made in accordance with Section 993, 25 P.S. § 2953.

Under the authority of Section 993,[2] the Democratic Party filed a nominating certificate nominating John Younge as the third Democratic candidate, while the Republican Party nominated petitioner by nominating certificate. No objections to either certificate were filed, and the Secretary proceeded to list the two new candidates along with the previously nominated four candidates for what now became an election for three seats on the Superior Court. The Secretary determined that the ballot positions would be determined by Section 1003(b) of the Election Code, 25 P.S.

---

1. Act of June 3, 1937, PAL. 1333, *as amended,* 25 P.S. §§ 2600–3591.

2. Added by the Act of Aug. 26, 1953, PAL. 1479, *as amended.*

§ 2963(b). Section 1003(b) provides that the names of candidates shall be printed under the title of the office for which they are candidates, and printed in the order of the votes obtained by the parties or bodies at the last gubernatorial election. In the case of offices for which two or more candidates are to be voted for, the candidates of each party are to be arranged based on the order of votes obtained by them at the primary, beginning with the candidates obtaining the highest number of votes.

Applying Section 1003(b), the Secretary listed the names of the now six candidates for three seats by listing the three Democrats first, the incumbent governor being of the Democratic Party and the three Republicans next. The specific order listed was Donohue (highest Democrat in Primary), Folino (next highest Democrat in Primary), Younge (nominated by nomination certificate), Allen (highest Republican in Primary), Bratton (next highest Republican in Primary) and petitioner, Shogan as the sixth and last-named candidate.

A further complicating factor is federal law requiring early mailing of absentee ballots to overseas voters and military voters. The ballots sent or to be sent to these voters are arranged as explained above. Those military voters serving in "remote" locations, however, were sent absentee ballots on or August 28, at which time it was known that a third vacancy would exist, but the nominations by certificate of Shogan and Younge had not been made. Accordingly, the ballots sent to these electors, who number 363, contained only the names of the four candidates nominated in the primary, but instructions to vote for three candidates.

Petitioner now asserts that the sending of the "4–name" ballot to 363 remote military electors, and the Secretary's planned "6–name" ballot constructed in accordance with Section 1003(b) violate the Constitu-

tional provision of uniformity in elections found in Article VII, Section 6. Petitioner argues that Section 993 of the Election Code, 25 P.S. § 2953 (Filing [sic] of certain vacancies in public office by means of nomination certificates and nomination papers) contemplates an entirely separate "election."

 The Supreme Court of Pennsylvania has set forth the criteria that must be satisfied in order for a court to lawfully enter a preliminary injunction.

There are six essential prerequisites that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that the issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity, and 6) that a preliminary injunction will not adversely affect the public interest. The burden is on the party who requested preliminary injunctive relief.

*Warehime v. Warehime*, 580 Pa. 201, 860 A.2d 41, 46–47 (2004)(internal quotation marks omitted). *Accord, Reed v. Harrisburg City Council*, 927 A.2d 698, 702–03 (Pa.Cmwlth.2007)(*en banc*). It is important to recognize that "[f]or a preliminary injunction to issue, *every one* of the pre-

requisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others." *Summit Towne Centre, Inc. v. Shoe Show,* 573 Pa. 637, 828 A.2d 995 (2003)(emphasis supplied).

Petitioner raises a number of novel arguments in support of her petition. While setting forth questions that may be of first impression, we are constrained to conclude that petitioner has failed to set forth a "clear" right to relief. We shall discuss briefly the various issues raised, not necessarily in the order raised in the petition.

## SEPARATE ELECTION

■ Petitioner first asserts that the provisions of Section 978.3, as implemented by Section 993 result in "the exclusive procedure" for filling the Joyce vacancy. Petitioner therefore argues that the Joyce vacancy is a "separate election" from the other two Superior Court seats. We do not see this as the legislative intent of these sections. Section 978.3 merely provides the manner for nominating a candidate where, as here, a judge who had previously declared his intention to stand for retention rescinds that declaration after the Primary election, but more than 60 days prior to the Municipal election. Neither Section 978.3 nor Section 993 speak to how the election itself is to be held. Section 993(c) does, however, specifically provide that its provisions shall not apply in certain circumstances, including offices "for which a method is provided in this act for the holding of special elections" and where the vacancy occurs at any time

within two calendar months immediately proceeding a general or municipal election.

More importantly, the Election Code sets forth in detail situations in which "special elections" are to be held. See Sections 626 through 637 of the Election Code, 25 P.S. §§ 2776–2787. Clearly, where the General Assembly intended an election to be "separate" or "special," it enacted legislation to do so. No such procedure is set forth here. Rather, Section 1003(b) clearly provides the manner in which candidates are to be listed for "offices for which two or more candidates are to be voted for." In this case, three candidates are to be voted for, and Section 1003(b) expressly requires the Secretary to list the candidates in a specific order.[3]

### Uniformity

■ Petitioner next asserts that the conduct of the Secretary violates Article VII, Section 6 of the Pennsylvania Constitution, which requires that "all laws regulating the holding of elections by the citizens … shall be uniform." This section has been interpreted to require the treatment of all persons in the same circumstances alike. *Kerns v. Kane,* 363 Pa. 276, 69 A.2d 388 (1949).

Petitioner asserts that having sent ballots containing 4 names to the 363 remote military electors, the Secretary must now "cure" that deficiency by providing the same ballot arrangement to the remaining electors of the state, with a supplemental "separate listing" for the Joyce vacancy.

We agree that the 363 remote military electors will have been partially disenfran-

---

**3.** Petitioner contends that the legislature did not contemplate nominations by certificate when it enacted Section 1003(b), since the Secretary is instructed to list candidates in the order of votes received in the primary. We find no inconsistency, however, because anyone nominated by nomination certificate either ran in the primary and received less votes than the winning candidates (as did petitioner here), or did not run in the primary at all, in which case they received no votes, which is obviously less than the number (no matter what the number) of votes received by the winning candidate/candidates.

chised if nothing is done to correct the "4–name" ballot, notwithstanding that the ballot was correct at the time it was sent (prior to the nomination by certificate of Younge and petitioner). However, uniformity must focus not only on the electors but also on similarly-situated candidates. Here, there are now six candidates for three Superior Court seats. Petitioner's proposed remedy would leave the candidates in vastly disparate situations, as candidates for exactly the same office, a 10–year term on the Superior Court, would be listed in separate "elections."

The Secretary, on the other hand, has proposed sending supplemental ballots to the 363 remote military electors containing only the correct listing of 6 candidates for 3 Superior Court seats. In order to avoid disenfranchising any of these electors, the supplemental ballot would be counted as superseding any original ballot sent in for the Superior Court seats, should such occur. If an elector has sent the original ballot, but fails to send a supplemental ballot, the original ballot, in it's entirely (and including 4 candidates listed for three Superior Court seats) would be counted. While not a perfect solution, perfection in elections, while desired, cannot always be obtained. This solution, we believe, best assures uniformity as to the electors, as all will have been presented with the same ballot; the ballot mandated by Section 1003(b). It also best assures uniformity among the candidates and avoids the multiple problems and challenges that may arise from listing the races separately.[4]

If the Court adopted Petitioner's request for a "special listing" on the same ballot without any basis in the law, such would in effect create a special status for petitioner that would be an arbitrary and capricious action by the Court for a "wrong" that is not irreparable, and would implicate a judicially-imposed form of activism that could substantially harm the other interested candidates who strenuously oppose the "separate election" remedy.

Finally, petitioner argues that ballot placement is very important, and that she is harmed by her placement as sixth on a six-person ballot. We have no doubt that ballot placement is an important aspect, perhaps more so in a fairly crowded judicial race. Nevertheless, where such placement is in accordance with law, as here, the Court cannot grant relief. Furthermore, petitioner's proposed "remedy" would have the potential of confusing electors, who would now be presented with two "separate" ballots for the same court, not to mention the harm that may befall other candidates for the seat.

Accordingly, petitioner's request for preliminary injunctive relief is DENIED.

### ORDER

AND NOW, this 21st day of September, 2007, petitioner's request for special and/or preliminary injunction is DENIED. The Secretary of the Commonwealth is hereby ORDERED, under the authority of this Court, to direct that the various county boards of election promptly send supplemental ballots to the remote military electors as proposed by the Secretary and discussed in this opinion, said ballots to contain the names of the six (6) candidates for the Superior Court in the order required by § 1003(b) of the Election Code,

---

4. As counsel for respondent argued to the Court, a "split" ballot might well result in the election of a candidate who was the top vote-getter in the "separate" 2–judge race, but was not among the top three vote-getters overall. In other words, such an arrangement could well result in the election of a candidate who otherwise would have lost the election. Such a result could not have been contemplated by the General Assembly.

and to count the returns of the same as directed by the Secretary.